**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KHYREL WARE,

Plaintiff,

v.

9:24-CV-143
(AJB/DJS)

CHRISTOPHER BOUTIN, Correctional Officer, *et al.*,

Defendants.

---

**APPEARANCES:** **OF COUNSEL:**

KHYREL WARE
Plaintiff, *Pro Se*
20-A-0725
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

HON. LETITIA JAMES
New York State Attorney General
*Attorney for Defendants*
300 South State Street, Suite 300
Syracuse, New York 13202

ELIZABETH V. LOMBARDI, ESQ.
Assistant Attorney General

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff, an individual incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleges that Defendants violated his rights while he was being transferred from Great Meadow Correctional Facility ("Great Meadow") to Upstate Correctional Facility ("Upstate") and then while he was held at Upstate in the months following. Dkt. No. 1, Compl.

Defendants now move for Summary Judgment, pursuant to Federal Rules of Civil Procedure 56(a), to dismiss the Complaint based on Plaintiff's failure to properly exhaust his administrative remedies and on the merits. Dkt. Nos. 51 & 51-2, Defs.' Mem. of Law. Plaintiff opposes the Motion. Dkt. Nos. 60, Pl.'s Opp, & 64-65. For the following reasons, the Court recommends that the Motion be **GRANTED in part** based on Plaintiff's failure to administratively exhaust his claims.

## I. PROCEDURAL BACKGROUND

Plaintiff alleges that during his transfer from Great Meadow to Upstate on June 2, 2022, Defendants Boutin, John Doe #1, and John Doe #2 tightened his handcuffs "extremely tight disregarding a bleeding laceration on [his] left wrist causing it to be reaggravated and bleed profusely." Compl. at p. 7.[2] Additionally, Plaintiff alleges that Defendants Boutin, John Doe #1, and John Doe #2 left him in an "un[n]atural,"

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] Citations to Plaintiff's Complaint are to page numbers provided by the Court's CM/ECF system.

"hogtied" position for multiple hours during his transportation to Upstate. *Id.* at p. 8. Plaintiff also alleges that during the transfer Defendant John Doe #3 conducted a body cavity search by "placing a finger in [Plaintiff's] anus." *Id.*

Plaintiff alleges that on June 4, 2022, Defendant Reif[3] handed Plaintiff a broke tablet through his cell hatch door. *Id.* When Plaintiff attempted to hand the tablet back through the slot, Defendant Reif "slammed the hatch" causing Plaintiff to suffer a "3 ½ inch laceration" to his arm. *Id.* Plaintiff also asserts that Defendants Reif, Holcombe, and Comstock subsequently denied him access to medical treatment for this injury. *Id.* at p. 9. Plaintiff alleges that on June 27, 2022, he put his hands through the hatch of his cell door and Defendant Reif caused Plaintiff injury by "bending" his wrist until he "screamed in agony." *Id.*

Plaintiff alleges that on August 17, 2022,[4] Defendants Reif, McGregor, Latray, and Bullock searched his cell and removed his mattress and pillow. *Id.* As a result, Plaintiff slept on a metal bedframe for two nights. *Id.* Plaintiff alleges that on August 30, 2022,[5] Plaintiff's cell was again searched by Defendants Reif, McGregor, and

[3] Defendants' motion papers provide the proper spellings of all Defendants' names, which the Court uses in this opinion.

[4] Plaintiff's Complaint states the mattress removal incident occurred on August 18, 2022. However, Plaintiff's initial grievance letter dated August 18, 2022 states the incident occurred on August, 17, 2022. For the purposes of this report-recommendation, this Court will use August 17, 2022 as the incident date relating to Grievance No. UST-1741-22. *See Jackson v. Downstate Corr. Facility*, 2018 WL 3650136, at n.3 (July 31, 2018) ("[I]t is possible [Plaintiff] got the dates wrong, or he wrote the wrong date on the grievance" however the specific date is immaterial for the purposes of a motion "as both dates are well within the 21 day time frame for filing a grievance.").

[5] Defendants' motion papers at times state the date of incident was August 31, 2022, Defs.' Mem. of Law at p. 4, however, this Court will use August 30, 2022, for the purposes of this report-recommendation.

Bullock and his mattress and pillow were removed. *Id.* at p. 9. Plaintiff alleges that, after removing his mattress, Defendant Bullock called Plaintiff "PREA man." *Id.* at p. 10.

Lastly, Plaintiff alleges that on September 1, 2022, Plaintiff covered his cell door with his t-shirt which he states is "standard procedure" when a female officer is working in the gallery and inmates need to use the toilet. *Id.* Defendant Hersey knocked on the cell door to which Plaintiff responded that he was "using the bathroom." *Id.* The cell door was opened and Defendants Latray, McGregor, Hersey, Holmes, John Doe #11, and John Doe #12 sprayed something in Plaintiff's right eye, he was "tackled by a shield," and "someone rubbed unknown chemicals in [his] eyes causing [him] to lose vision." *Id.* Plaintiff was then punched in his "head, face, and body" and handcuffed. *Id.* After, Plaintiff was brought to a holding pen "to wait 15 minutes for decontamination" where Defendant John Doe #12 "taunted" Plaintiff by stating, "that's what [you] get for snitching and writing grievances." *Id.* Plaintiff alleges that Defendants delayed Plaintiff's access to medical treatment during this waiting period. *Id.* Plaintiff also alleges that when he was eventually treated by Defendant Holcombe after the incident, she did not provide Plaintiff with adequate treatment "for pain" to his "bruised body and aching eye or [his] shortness of breath." *Id.*

On review pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the District Court permitted the following claims to proceed to discovery: (1) Plaintiff's Fourth Amendment unlawful body cavity search claims against Defendants John Does #3-7 for

a search on June 2, 2022; (2) Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendants Boutin, John Doe #1, and John Doe #2 for allegedly hogtying Plaintiff during transport on June 2, 2022 ("First Conditions-of-Confinement Claim"); (3) Plaintiff's Eighth Amendment excessive force claim against Defendants Boutin, John Doe #1, and John Doe #2 for tightening Plaintiff's handcuffs on June 2, 2022 ("First Excessive Force Claim"); (4) Plaintiff's Eighth Amendment excessive force claim against Defendants John Does #3-6 and a failure-to-intervene claim against John Doe #7 for transporting him in an unnatural position on June 2, 2022 ("Second Excessive Force Claim"); (5) Plaintiff's Eighth Amendment excessive force claim against Defendant Reif for closing a cell hatch on Plaintiff's wrist on June 4, 2022 ("Third Excessive Force Claim"); (6) Plaintiff's Eighth Amendment medical indifference claim against Defendants Reif, Holcombe, and Comstock for denying him access to treatment for his wrist on June 4, 2022 ("Third Medical Indifference Claim"); (7) Plaintiff's Eighth Amendment excessive force claim against Defendant Reif for "bending" Plaintiff's wrist on June 27, 2022 ("Fourth Excessive Force Claim"); (8) Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendants Reif, McGregor, Latray, and Bullock for mattress removals on August 17, 2022, and August 30, 2022 ("Third Conditions-of-Confinement Claim"); (9) Plaintiff's First Amendment retaliation claim against Defendants Rief, McGregor, Latray, and Bullock for mattress removal on August 30, 2022 ("First Retaliation Claim"); (10) Plaintiff's First Amendment retaliation claim against Defendants Latray, McGregor, Hersey, Holmes,

John Doe #11, and John Doe #12 for a use-of-force incident on September 1, 2022 ("Second Retaliation Claim"); (11) Plaintiff's Eighth Amendment excessive force claim against Defendants Latray, McGregor, Hersey, Holmes, John Doe #11, and John Doe #12 for a use-of-force incident on September 1, 2022 ("Fifth Excessive Force Claim"); (12) Plaintiff's Eighth Amendment medical indifference claim against Defendants Latray, McGregor, Hersey, Holmes, John Doe #11, and John Doe #12 for delaying access to medical treatment on September 1, 2022 ("Fourth Medical Indifference Claim"); and (13) Plaintiff's Eighth Amendment medical indifference claim against Defendant Holcombe for failing to treat him adequately on September 1, 2022 ("Fifth Medical Indifference Claim"). Dkt. No. 9 at pp. 12-33 & 36.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); *see also Scott v.*

*Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). "Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.* Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. John Doe Defendants

The Complaint named numerous John Doe Defendants. *See generally* Compl. The claims that were permitted to proceed following an initial review included numerous claims that named John Doe Defendants. *See*, *e.g.*, Dkt. No. 9 at pp. 15-16 & 29-30. That Order also specifically advised Plaintiff that he

> must take reasonable steps to ascertain the identity of the "Doe" defendants remaining in this action through discovery, and when identified, seek to amend the complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a). Plaintiff's failure to timely identify and serve these defendants will result in their termination from the action and dismissal of the claims asserted against them pursuant to Fed. R. Civ. P. 4(m) and 41(b).

*Id.* at p. 37. To date, the Court's docket in this case reflects that John Does #1, 2, 3, 4, 5, 6, 7, 11, and 12 remain unidentified.

"Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice." *Delrosario v. City of New York*, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010); *see also Coward v. Town and Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (quotation omitted) ("Where a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the defendant's name, however, the plaintiff simply cannot

continue to maintain a suit against the John Doe defendant."). Dismissal of an unidentified Doe Defendant is appropriate pursuant to FED. R. CIV. P. 41(b), which permits a court to dismiss an action for failure to prosecute or to comply with a court order, and FED. R. CIV. P. 4(m), under which a court must dismiss, absent a showing of "good cause," claims against a defendant who is not served within ninety days of the filing of the complaint. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 501-02 (N.D.N.Y. 2009); *Davis v. Doe*, 2017 WL 8640829, at *5 (N.D.N.Y. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 1582230 (N.D.N.Y. Mar. 27, 2018).

Therefore, because discovery is closed and Plaintiff has not identified Defendants John Does #1, 2, 3, 4, 5, 6, 7, 11, and 12, the Court recommends that Plaintiff's claims against those Defendants be dismissed. Because Plaintiff's Fourth Amendment body cavity search claim and his Second Excessive Force Claim are made only against John Doe Defendants, those claims should also be dismissed.

**B. Exhaustion of Administrative Remedies**

Defendant seeks summary judgment dismissing all claims except Plaintiff's unlawful body cavity search claim based on his alleged failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). Defs.' Mem. of Law at pp. 1-8.

*1. Exhaustion Procedure*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[6]

In New York, the administrative remedies consist of a three-step Incarcerated Grievance Program. First, a grievance is submitted to the Incarcerated Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. 7 N.Y.C.R.R. § 701.4(a). An inmate must submit a grievance "within 21

[6] Copies of unreported cases from Westlaw are attached to this opinion for Plaintiff's reference.

calendar days of an alleged occurrence." 7 N.Y.C.R.R. § 701.5(a)(1). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a). The IGRC reviews and investigates the formal complaint and, if necessary, issues a written determination. 7 N.Y.C.R.R. § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. 7 N.Y.C.R.R. § 701.5(c). Finally, upon appeal of the superintendent's decision, the CORC makes the final administrative determination. 7 N.Y.C.R.R. at § 701.5(d).

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. 7 N.Y.C.R.R. § 701.8(a). The inmate's allegations are given a grievance number and the Superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. 7 N.Y.C.R.R. §§ 701.8(b) & (c). If it is determined that the grievance is a bona fide harassment issue, the Superintendent must initiate an investigation or request an investigation be undertaken by the Inspector General's Office or the New York State Police. 7 N.Y.C.R.R. § 701.8(d). The Superintendent is to render a decision on the grievance within 25 days of receipt unless an extension is granted7 N.Y.C.R.R. § 701.8(f). If the Superintendent fails to respond within 25 days, the grievant may appeal the grievance to CORC "by filing a notice of decision to appeal

(form #2133) with the inmate grievance clerk." 7 N.Y.C.R.R. § 701.8(g). The grievant may appeal the Superintendent's response to CORC by filing a notice of decision to appeal within seven days of receipt of the Superintendent's response. 7 N.Y.C.R.R. § 701.8(h). "Unless otherwise stipulated . . . all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in section 701.5 of this Part shall be followed." 7 N.Y.C.R.R. § 701.8(i).

"Complete exhaustion to the highest level is required for each claim." *Singh v. Goord*, 520 F. Supp. 2d 487, 495 (S.D.N.Y. 2007) (citing *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y.2004)); *see also Allah v. Adams*, 573 F. Supp. 3d 904, 909 (W.D.N.Y. 2021). Within DOCCS that requires that an appeal be taken to CORC. Dkt. No. 51-71, Seguin Decl. at ¶ 5; *Veloz v. New York*, 339 F. Supp. 2d at 514.

*2. The Record Regarding Exhaustion*

At all times relevant to the facts of this case, Plaintiff was housed at Upstate. DOCCS records demonstrate that, during this time period, Plaintiff filed seven grievances at Upstate. Dkt. No. 51-62, Richards Decl. at ¶ 8 & Ex. A. Several of those grievances do not concern events that occurred at Upstate, *id.* at ¶ 10, or concern incidents that are not part of what remains to be litigated in this case. *Id.* at ¶¶ 13, 15, 19, & 21. That leaves three grievances recorded as filed at Upstate that are relevant to this action.

Grievance UST-0900-02 was filed on June 6, 2022. *Id.* at ¶ 12. It concerns allegations at Upstate on June 2 and June 4. *Id.* at Ex. C.[7] As such, it relates to Plaintiff's: First Conditions-of-Confinement Claim; First, Second, and Third Excessive Force Claims; and Third Medical Indifference Claim identified above. The grievance was coded as a staff misconduct grievance and referred directly to the Superintendent, who responded by reporting that the matter had been investigated, and no misconduct had been found. *Id.* at Ex. C p. 7. There is no record of an appeal of this decision to CORC. Seguin Decl. at ¶ 9.

There is no record of any grievance having been filed regarding the events on June 27, which concern Plaintiff's Fourth Excessive Force Claim. Richards Decl. at Ex. A.

Grievance UST-174-22 was filed on September 14, 2022. *Id.* at ¶ 17. DOCCS records indicate that it concerns events occurring between August 17 and September 12, 2022. *Id.*; *see also id.* at Ex. F. The grievance was also coded as a staff misconduct grievance and referred directly to the Superintendent. *Id.* at Ex. F p. 9. An investigation was conducted, after which Plaintiff was advised by the Superintendent that no evidence of staff misconduct had been found. *Id.* And again, DOCCS has no record of an appeal of this decision to CORC. *Id.* at ¶ 18; Seguin Decl. at ¶ 9.

---

[7] Defendants contend that Plaintiff failed to file a grievance regarding events that occurred on June 4, 2022. Defs.' Mem. of Law at p. 5. However, UST-0900-22 included a description of the June 4, 2022 incident. Richards Decl., Ex. C. at pp. 4-5. This is supported by the fact that Defendant Reif providing a memorandum regarding the events of June 4 in response to the grievance investigation. *Id.* at p. 15.

Given this record, Defendants have carried their initial burden of establishing that Plaintiff failed to exhaust administrative remedies available to him.

*3. Should the Failure to Exhaust be Excused*

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 578 U.S. at 642. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Saeli v. Chautauqua Cnty., N.Y.*, 36 F.4th 445, 453 (2d Cir. 2022).

Plaintiff makes general, conclusory allegations regarding the inadequacy of grievance procedures at Upstate Correctional Facility. Pl.'s Opp at pp. 5-8. However, "reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). "Courts require more than a "conclusory assertion" of a circumstance that rendered

grievance procedures unavailable when they otherwise should be." *Murphy v. Rodriguez*, 2024 WL 4290723, at *5 (S.D.N.Y. Sept. 25, 2024).

The record establishes that none of the *Ross* exceptions are applicable here. Plaintiff filed numerous grievances at Upstate. Richards Decl. at Ex. A. This "shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood [the] inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the first two exceptions identified under *Ross* are not applicable here." *Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018) (citation omitted), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018); *see also Lurch v. Bui*, 2020 WL 8450543, at *5 (N.D.N.Y. Dec. 8, 2020), *report and recommendation adopted sub nom. Lurch v. Jones*, 2021 WL 392486 (N.D.N.Y. Feb. 4, 2021).

Plaintiff, in fact, specifically testified that he "knew how to put a grievance in" and has actively participated in the IGP by filing seven grievances while incarcerated at Upstate. Pl.'s Dep. at p. 60. He also admitted during his deposition that he "knew how to appeal." *Id.* Specifically, Plaintiff testified he understood how to appeal an IGRC grievance response to the superintendent "because it's written at the bottom [of the response]," *id.* at p. 137, and that the final administrative appeal must be made to CORC. *Id.* at p. 63. "[C]ourts have found that affirmative participation in the grievance process demonstrates that the grievance process is not a dead end." *Bonie v. Annucci,* 2023 WL 2711349, at *12 (S.D.N.Y. Mar. 30, 2023). Given Plaintiff's testimony he further

cannot claim that the process was so opaque that he could not navigate it. *Jackson v. West*, 2025 WL 1033787, at *9 (N.D.N.Y. Feb. 20, 2025), *report and recommendation adopted*, 2025 WL 814966 (N.D.N.Y. Mar. 14, 2025).

While Plaintiff's response to Defendants' Motion states that "New York's grievance procedure was unavailable" because the June 2, 2022 incident occurred during a transfer between facilities, and it was unclear at which facility Plaintiff needed to file his grievance, Pl.'s Mem. of Law at p. 3, the record shows that he successfully filed a grievance for that very event and that it was investigated and responded to. Richards Decl., Ex. C. Plaintiff did not appeal it, however. That failure was not affected by his transfer in June 2022. Therefore, Plaintiff understood how to properly appeal to the superintendent and CORC and such process was not "so opaque" that Plaintiff's non-participation should be excused.

Plaintiff also contends that administrative remedies were unavailable due to delays in IGRC responding to his grievances, Pl.'s Opp. at p. 15, but this Court does not find this argument compelling. Plaintiff's Opposition stated that Upstate's procedure was unavailable because IGRC did not issue responses to his grievances for several months after he filed them, despite inquiries and attempts to appeal. *Id.* However, Directive 4040 provides that "[m]atters not decided within the time limits may be appealed to the next step." Dkt. No. 60-4 at p. 44. Therefore, any delay in response from IGRC is remedied by Directive 4040 allowing individuals to appeal to the next

step, and Plaintiff has not shown that properly submitted appeals were ignored rendering his remedies unavailable.

Plaintiff also stated in his Opposition that "he tried to pursue his administrative remedies but was frustrated by prison guards" and "thwarted by defendants." Pl.'s Opp at pp. 6 & 8. "To render a grievance process unavailable, a prisoner's fear needs to relate to threats or intimidation in connection with the grievance process itself." *Scott v. Cambisi*, 2024 WL 867102, at *11 (W.D.N.Y. Feb. 29, 2024) (cleaned up). Plaintiff's Complaint states that Defendants' alleged assault on September 1, 2022, was in retaliation for Plaintiff filing previous grievances because John Doe #12 stated, "'that's what [you] get for snitching and writing grievances.'" Compl. at p. 10. Plaintiff also testified that Defendants called him "PREA man" for filing a grievance relating to the body cavity search on June 2, 2022. Pl.'s Dep. at p. 112. "However, none of the actions allegedly taken by the Defendants actually prevented [Plaintiff] from submitting his complaint letter." *McNab v. Doe*, 686 Fed. App'x. 49, 51 (2d Cir. 2017); *Riles v. Buchanan*, 656 F. App'x 577 (2d Cir. 2016) ("[B]ecause [Plaintiff] claims that he thereafter submitted his . . . grievance in spite of this alleged threat, it cannot be said that the threat interfered with his exhaustion."). Plaintiff consistently submitted grievance letters about alleged violations committed by the Defendants after these comments were made. Dkt. 60-3 at pp. 3-25; Dkt. No. 60-4 at pp. 1-15. Therefore, administrative remedies were not unavailable to Plaintiff due to intimidation because Defendants' statements did not actually prevent Plaintiff from participating in the grievance process.

"Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*." *Ransom v. Cook*, 2024 WL 1469077, at *3 (N.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, 2024 WL 1131056 (N.D.N.Y. Mar. 15, 2024). With the exception noted below, he has failed to carry that burden.

*4. Incidents on June 27, 2022*

With respect to the events of June 27, however, the Court notes that the record creates a different question. As noted above, DOCCS records show no evidence of a grievance having been filed by Plaintiff regarding events of this day which relate to Plaintiff's Fourth Excessive Force Claim against Reif. *See* Richards Decl. at Ex. A; Defs.' Mem of Law at p. 5. In opposition to the Motion, however, Plaintiff attached a copy of grievance letters dated June 27 and 28, 2022, that include claims that Reif and others searched his cell and that Reif caused him to suffer a "swollen injured wrist" by bending his wrist while he was in handcuffs. Dkt. No. 60-3 at pp. 4-5. Plaintiff testified that he was not provided a grievance number in connection with this incident. Pl.'s Dep. at p. 101. Plaintiff also testified that he wrote a letter to Superintendent Uhler about IGRC's non-response and attempted to appeal it to CORC. *Id.* at p. 102. The record does establish that Plaintiff submitted several letters to Uhler inquiring about the status of grievances, and wrote to CORC complaining of unfiled and unresolved grievances, including the one regarding events of June 27 and inquiring about the status. Dkt. No. 60-4 at pp. 17-20. No record of any response to Plaintiff's inquiries is in the record.

In general, this Court has viewed claims that grievances have been submitted, but not filed, with skepticism when they amounted to purely conclusory assertions on the part of the plaintiff. *See*, *e.g.*, *Gough v. Morris*, 2018 WL 7199494, at *4 (N.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 416150 (N.D.N.Y. Feb. 1, 2019). This case, however, is different in that Plaintiff

> has offered what he purports to be the grievances he filed in opposition to the Motion. He also offers additional correspondence he maintains was submitted to grievance officials at the facility inquiring about the status of the grievances and asking, based on the purported lack of a response, that the grievances be moved to the next step in the administrative process. These documents do not establish that they were in fact filed with correctional staff, but they are sufficient at the very least to raise a question of fact about whether Plaintiff sought to and was in some way prevented from utilizing the grievance process. This case is different in that regard from others where a plaintiff made a purely conclusory allegation that he had filed grievances, with no documentary proof.

*Croney v. Medbury*, 2024 WL 5294279, at *4 (N.D.N.Y. Nov. 12, 2024), *report and recommendation adopted sub nom. Croney v. Medburry*, 2024 WL 4986160 (N.D.N.Y. Dec. 5, 2024).

Accordingly, the Court recommends that all claims be dismissed as unexhausted, with the exception of events related to the June 27, 2022 incident that forms the basis of the Fourth Excessive Force Claim. With respect to that claim, the Court recommends that an exhaustion hearing be scheduled to resolve the factual questions that render summary judgment on that claim inappropriate.

**C. Merits of Plaintiff's Fourth Excessive Force Claim**

Given the analysis outlined above, the only one of Plaintiff's claims that presents a factual question as to exhaustion is what the initial review order identified as Plaintiff's Fourth Excessive Force Claim, which concerns allegations that Reif used inappropriate force on June 27. Compl. at p. 9.

"The Eighth Amendment prohibition on cruel and unusual punishments precludes the unnecessary and wanton infliction of pain and protects inmates against the use of excessive force." *Mason v. Moore*, 2018 WL 2465384, at *2 (N.D.N.Y. May 8, 2018), *report and recommendation adopted*, 2018 WL 2464449 (N.D.N.Y. June 1, 2018). "To establish a constitutional violation under the Eighth Amendment for using excessive force, an inmate must meet both an objective and a subjective requirement." *Allaway v. McGinnis*, 473 F. Supp. 2d 378, 381 (W.D.N.Y. 2007) (citing *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999)) (internal alteration omitted). "Objectively, a [section] 1983 plaintiff must establish that the alleged deprivation is sufficiently serious or harmful to reach constitutional dimensions." *Brewer v. Kamas*, 533 F. Supp. 2d 318, 326 (W.D.N.Y. Feb. 7, 2008) (citing *Romano v. Howarth*, 998 F.2d 101, 104 (2d Cir. 1993)). However, an Eighth Amendment excessive force claim does not "require any serious injury, and the use of any unnecessary force is considered excessive." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

Here, Plaintiff testified that he placed his hands through the hatch for Officer Reif to remove his handcuffs, and that this was normal "procedure" that he and other inmates

do "without being told." Pl.'s Dep. at p. 91. Plaintiff also testified that he was not resisting in any way. *Id.* at p. 92. According to Plaintiff, while removing the handcuffs, Defendant Reif and other officers began "bending" both wrists, and Plaintiff reacted by asking, "[w]hat are you doing?" *Id.* at pp. 92-93. Plaintiff testified the incident caused him to suffer a wrist sprain, "tingling in [his] nerves," and pain to his shoulder. *Id.* at p. 94.

Conversely, Defendant Reif's declaration states that while he was removing the handcuffs, Plaintiff "attempted to pull his hand into the cell," and "minimal, reasonable, and appropriate force" was used by taking "control of the Plaintiff's left arm using both of [Defendant Reif's] hands." Dkt. No. 51-56, Reif Decl. at ¶¶ 14 & 15. This description of the events is consistent with Defendant Reif's staff memorandum about the incident, *Id.* at Ex. B, and Defendant Latray's Misbehavior Report for Plaintiff, both of which are dated June 27, 2022. Dkt. No. 51-46.

This is not a case where the allegation is that of mere tight handcuffing, which often does not amount to an Eighth Amendment violation. *See Raynor v. Maldonado*, 2024 WL 4533748, at *3 (D. Conn. Oct. 21, 2024). Instead, here Plaintiff alleges that with one handcuff off Defendant intentionally pulled his arm without reason. Pl.'s Dep. at pp. 92-93. Defendant denies this allegation and states that "force became necessary to protect my safety and to restore order." Reif Decl. at ¶ 14. He states that it took both of his hands to gain control of Plaintiff's left arm. *Id.* at ¶ 15.

Plaintiff and Defendants' accounts of the incident dispute whether the force used was objectively necessary. As a result, this case "presents quintessential fact questions that cannot be resolved on summary judgment." *McGinnis v. Crissell*, 2018 WL 4635707, at *4 (N.D.N.Y. Apr. 18, 2018), *report and recommendation adopted*, 2018 WL 3970668 (N.D.N.Y. Aug. 20, 2018). Therefore, it is recommended that summary judgment is denied as to Plaintiff's Fourth Excessive Force Claim. *See Brewer v. Kamas*, 533 F. Supp. 2d at 327 ("The sharply contrasting versions of the encounter between Plaintiff and Defendants . . . thus create a material issue of fact as to the first prong of Plaintiff's excessive force claim, specifically, whether the use of any force to restraint Plaintiff . . . was objectively necessary.").[8]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 51) be **GRANTED** in part and **DENIED** in part; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

[8] Those same factual questions also preclude granting summary judgment based on qualified immunity since the right to be free from excessive force is clearly established. *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."); *Kavanaugh v. Vill. of Green Island*, 2018 WL 1033288, at *6 (N.D.N.Y. Feb. 22, 2018); *Swift v. Mauro*, 2008 WL 207793, at *7 (N.D.N.Y. Jan. 24, 2008).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[9] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: August 19, 2026
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

[9] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).